UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Cynthia Abbott,

         Plaintiff,

  v.

Wyoming County Sheriff's Office,

         Defendant.

**Decision and Order**

15-CV-531W

---

## I. INTRODUCTION

The Hon. Elizabeth Wolford has referred this case to this Court under 28 U.S.C. § 636(b). (Dkt. No. 6.) Pending before the Court are two cross-motions: one (Dkt. No. 27) by plaintiff Cynthia Abbott ("Abbott") to compel a further response to Request 15 in her First Request for Production of Documents; and one (Dkt. No. 29) by defendant the Wyoming County Sheriff's Office for a protective order against Abbott's request and for an order compelling a date certain for Abbott's deposition. Abbott's deposition had started on February 28, 2017, but the parties agreed to suspend it when Abbott provided previously undisclosed details about ongoing discriminatory conduct. Having supplemented some of her interrogatory responses, Abbott now believes that she is entitled to a search of email messages that postdate February 2016, the most recent date covered by defendant's previous search. Defendants object that another broad search for email messages would be unduly burdensome and out of proportion to the probative value of the contents.

The Court has deemed the cross-motions submitted on papers under Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons below, the Court grants each motion in part.

## II. BACKGROUND

This case concerns allegations that defendant deprived Abbott of promotions and work shifts or assignments that she was otherwise eligible to receive, for no reason other than her medical condition of epilepsy. The case also contains allegations that defendant retaliated against Abbott when she complained. Since the pending motion is not a dispositive motion or any other motion that requires detailed discussion of the substance of the case, the Court will discuss only those aspects of the case most relevant to the discovery issues in play.

According to the complaint, Abbott joined defendant in September 2009 as a temporary corrections officer. The first few months of Abbott's employment appear to have been uneventful, but the events that led to this case began around early 2010. Around that time, Abbott suffered an epileptic seizure during a required defensive tactics training course. Abbott retook the course and passed it, and she worked as a part-time corrections officer into 2013 with only one other seizure event in 2012. Abbott asserts that medication keeps her epilepsy under control and otherwise has no impact on her work performance.

Nonetheless, defendants allegedly have used Abbott's epilepsy condition as a basis for depriving her of certain work opportunities that have arisen from time to time. In the summer of 2013, a full-time corrections officer position opened. Defendant passed over Abbott twice during the hiring process, even though Abbott had seniority and the highest civil service exam results. (Dkt. No. 1 at 5–6.) Some problems allegedly arose later in 2013 with respect to written personnel warnings for which Abbott did not receive appropriate notice. (*Id.* at 7.) Also around October 2013, a temporary full-time position opened but went to someone with less seniority than Abbott.

2

(*Id.* at 8.) At about the same time, Abbott served a Notice of Claim on defendant to preserve her rights for possible future litigation. Just a few months after the Notice of Claim, defendant placed Abbott on administrative leave for reasons related to the seizure that she suffered in 2012. (*Id.* at 9.) The administrative leave ended in early April 2014, and defendant agreed that Abbott would receive pay while on administrative leave, but Abbott did not receive any pay until late March 2014. Also in 2014, Abbott applied for two other permanent positions and received neither. Abbott finally won a permanent position on February 1, 2015 and has been working that position since. (*Id.* at 11.) Importantly, as will become apparent below, the complaint contains only two references to events that might have happened after February 1, 2015. In paragraph 50, Abbott asserts that defendant has continued to deprive her of chances to work in the control room without any stated reason; Abbott attributes this deprivation to retaliation for filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). (*Id.*) In paragraph 51, Abbott asserts that defendant has denied her the ability to work certain shifts that, to her, seem like pretenses to cover a retaliatory motive. (*Id.*) Abbott filed suit on June 17, 2015, asserting claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12213; and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§ 290–301.

Abbott filed her pending motion to compel on April 20, 2017; defendant filed its cross-motion in response on May 10, 2017. The core of the discovery dispute seems to be what the timeframe is for Abbott's allegations and whether defendant has produced discovery in accordance with that timeframe. On February 11, 2016, Abbott prepared a First Request for Production of Documents for defendant's consideration. (Dkt. No. 27-3.) In Request 15, Abbott sought "[a]ll

3

emails sent and received by Gregory Rudolph, Bruce James and Matthew Case from September 2009 through the present, in native, electronic format, subject to an agreement of the parties regarding search terms." (*Id.* at 7.) Defendant responded in September 2016, producing approximately 1,004 pages of responsive email messages and a privilege log containing 369 separate entries. (Dkt. No. 29-1 at 5.) Request 15 appeared to be fulfilled until Abbott's deposition on February 28, 2017. During the deposition, Abbott described discrimination and retaliation occurring through the present time. The description of ongoing improper conduct prompted the suspension of Abbott's deposition and different protests from each side. Defendant protested that Abbott did not describe ongoing conduct in her responses to its interrogatories. Abbott protested that defendant's response to Request 15 did not include any email messages dated after February 2016. The pending cross-motions soon followed.

III.  DISCUSSION

The general principles governing management of discovery are well-known. The Court has wide discretion to conduct discovery in ways that help bring about the efficient administration of justice. *See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (citing *Am. Savings Bank, FSB v. UBS PaineWebber, Inc. (In re Fitch, Inc.)*, 330 F.3d 104, 108 (2d Cir. 2003)). The 2015 amendments to the Federal Rules of Civil Procedure emphasized the need to focus on proportionality. Considerations of proportionality can include reviewing whether discovery production has reached a point of diminishing returns. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, No. 14-CV-7126 (JMF), 2016 WL 6779901, at *3 (S.D.N.Y. Nov. 16, 2016) ("Rule 26(b)(1)'s proportionality requirement means [that a document's] 'marginal utility' must also be considered.") (citations

4

omitted); *Updike v. Clackamas County*, No. 3:15-CV-00723-SI, 2016 WL 111424, at *1 (D. Or. Jan. 11, 2016) ("There is a tension, however, among the objectives of Rule 1. As more discovery is obtained, more is learned. But at some point, discovery yields only diminishing returns and increasing expenses. In addition, as more discovery is taken, the greater the delay in resolving the dispute. Finding a just and appropriate balance is the goal, and it is one of the key responsibilities of the court in managing a case before trial to assist the parties in achieving that balance.").

To apply the general discovery principles to the pending cross-motions, the Court needs to clarify where the parties diverge in their views of Abbott's alleged timeline. The complaint does not list or refer to any specific event occurring after February 1, 2015. That said, paragraphs 50 and 51 refer to retaliation allegedly occurring "since being hired in a permanent capacity." Those paragraphs arguably can be interpreted to mean that the denial of work in the control room and the denial of certain shifts are continuing through the present time. The complaint, in turn, should frame the rest of the dispute. Request 15 mentioned September 2009 through the present; running through the present is reasonable but should stop at the events described in paragraphs 50 and 51 of the complaint. Paragraphs 50 and 51 acquire some details through the second supplemental response to interrogatories that Abbott provided on April 4, 2017. (Dkt. No. 27-14.) The second supplemental response, prepared after the start of Abbott's deposition, mentions only two specific events that occurred after any produced email messages dated from February 2016: a denial of transport duties that occurred as recently as February 9, 2017 (*id.* at 4); and an inability to apply for a sergeant's position in July 2016 (*id.* at 12). The only other events referenced at all that occurred after February 2016 concern written warnings about cell phones (*id.* at 3, 6); control

room assignments (*id.* at 4); transport duties (*id.*); assignments to programs and court hours (*id.*); tardiness (*id.* at 6); and surveillance (*id.* at 7). In essence, then, Abbott is claiming one application denial, along with retaliatory shaping of her work assignments since February 2016. Request 15 does not have to be revisited for any other topics.

With Abbott's timeline clarified, a limited remedy for her becomes apparent. On at least one prior occasion, the Court has crafted discovery production based on specific search terms. *See Armstrong Pump, Inc. v. Hartman*, No. 10-CV-446S, 2014 WL 6908867, at *6 (W.D.N.Y. Dec. 9, 2014). That kind of approach should work here to balance Abbott's need to explore ongoing claims—claims that have been referenced in some way since the complaint—and defendant's concerns about proportionality. On or before July 31, 2017, defendant will supplement its response to Request 15 by searching for email messages dated between March 1, 2016 and May 1, 2017 that contain Abbott's name, or any name mentioned in her second supplemental response, plus any of the following search terms:

- sergeant
- cell phone
- control room
- booking
- transport
- court hours
- late OR lateness
- surveillance OR camera

The Court denies Abbott's motion to the extent that it seeks any other relief. Even with allegations of ongoing retaliation, defendants at some point need to have some finality about what they are facing. *Cf., e.g., E.E.O.C. v. CRST Van Expedited, Inc.*, 679 F.3d 657, 676 (8th Cir. 2012)

6

(affirming the dismissal of claims that presented a "continuously moving target of allegedly aggrieved persons, the risk of never-ending discovery and indefinite continuance of trial"); *Olivet Baptist Church v. Church Mut. Ins. Co.*, No. 13 C 1625, 2015 WL 765715, at *7 (N.D. Ill. Jan. 7, 2015) (criticizing plaintiff's reservation of "the right to further amend or supplement those [fourth supplemental discovery] responses, which implied the prospect of 'never ending fact discovery.'"), *report and recommendation adopted*, No. 13 C 1625, 2015 WL 764051 (N.D. Ill. Feb. 23, 2015). Abbott also needs to face the concern about diminishing returns. Barring any startling new events that occur during her continued employment, email messages after May 1, 2017 will not be as probative as the aggregate of discovery that Abbott will have received for 2009 through that date.

The parties will conclude Abbott's deposition on or before September 8, 2017. The Court will issue a new scheduling order separately to address remaining discovery deadlines.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court grants Abbott's motion (Dkt. No. 27) in part and defendant's cross-motion (Dkt. No. 29) in part. The Court denies the motions to the extent that they seek any relief not discussed above.

SO ORDERED.

　　　　　　　　　　　　　　　　　　　　　*/s Hugh B. Scott*
　　　　　　　　　　　　　　　　　　　　　Honorable Hugh B. Scott
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge
DATED: May 16, 2017